UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                  :

In re:                               :

                                  :        Bankruptcy Case

       KOSSOFF PLLC,           :        No. 21-10699 (DSJ)

                                  :

               Debtor,           :

                                  :

------------------------------------------------------------------------X
                                  :

ALBERT TOGUT, *not individually but solely in his*
*capacity as Chapter 7 Trustee of the Estate of Kossoff*
*PLLC*,                             :

                                  :

             Plaintiff,        :

                                  :

        -v-                    :        23 Civ. 4132 (JPC)

                                  :    Adv. Proc. No. 23-1080 (DSJ)

BRUCE BARASKY,             :

                                  :      <u>OPINION AND</u>

             Defendant.      :      <u>ORDER</u>

                                  :

------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      This case arises from the bankruptcy of Kossoff PLLC (the "Debtor"), a defunct law firm whose principal, Mitchell L. Kossoff, misappropriated client funds. *See Togut v. Barasky (In re Kossoff PLLC)*, Adv. Proc. No. 23-1080 (DSJ) ("Adversary Proceeding"), 2024 WL 665913, at *1 (Bankr. S.D.N.Y. Feb. 16, 2024).  Albert Togut, as Chapter 7 Trustee of the Estate of Kossoff PLLC, instituted the Adversary Proceeding against Bruce Barasky to recover assets for the benefit of Kossoff PLLC's creditors.  Before the Court is Barasky's motion to (1) withdraw the reference of the Adversary Proceeding to the Bankruptcy Court and (2) dismiss the case.  For the reasons that follow, the motion to withdraw the reference is denied without prejudice to renewal if, at a later phase of this case, the need for a jury trial becomes concrete.  The Adversary Proceeding therefore is remanded to the Bankruptcy Court for consideration of Barasky's motion to dismiss.

# I. Background[1]

"Creditors of Kossoff PLLC filed an involuntary Chapter 7 petition against Kossoff PLLC on April 13, 2021, after discovering that [Mitchell] Kossoff had apparently misappropriated client funds held in the firm's trust account." *In re Kossoff PLLC*, 2024 WL 665913, at *1; *see* 11 U.S.C. § 701 *et seq*. (Chapter 7 of the Bankruptcy Code); *Kossoff v. Togut*, Nos. 22-122, 22-124, 2023 WL 5662748, at *1 (2d Cir. Sept. 1, 2023).  On December 13, 2021, Kossoff pleaded guilty in New York State Supreme Court, New York County, to three counts of committing grand larceny and one count of engaging in a scheme to defraud.  *See In re Kossoff PLLC*, No. 21-10699 (DSJ) (Bankr. S.D.N.Y.) ("Kossoff PLLC Bankruptcy"), Dkt. 308 at 1 (letter to the Honorable David S. Jones, U.S. Bankruptcy Judge); *see also Kossoff*, 2023 WL 5662748, at *1.

Togut was appointed as the Debtor's interim trustee in the Chapter 7 case on May 12, 2021 and became Trustee following the Section 341(a) creditors' meeting.  Kossoff PLLC Bankruptcy, Dkts. 15, 319, 349, 356, 374; Dkt. 3 ("Opposition") at 4; *see* 11 U.S.C. § 341.  As Togut explains, "[c]onsistent with his fiduciary duty, [he] undertook an investigation into the Debtor's financial affairs and estate assets," Opposition at 4, and "[a]s a result of this extensive and labor-intensive investigation, . . . has commenced more than fifty adversary proceedings in the Bankruptcy Court, seeking to recover assets for the benefit of the Debtor's creditors," *id.* at 2.

Togut instituted the Adversary Proceeding against Barasky on April 3, 2023, as part of his

---

[1] This factual background, which is assumed to be true for purposes of resolving Barasky's motion to withdraw the reference, is taken from the allegations in the Complaint in the Adversary Proceeding, the parties' filings on this docket, and other filings in the Adversary Proceeding. *See Roman Cath. Diocese of Rockville Ctr. v. Arrowood Indem. Co.*, No. 20 Civ. 11011 (VEC), 2021 WL 1978560, at *1 n.1 (S.D.N.Y. May 17, 2021) (assuming facts "drawn from the parties' filings" to be true in deciding a motion to withdraw the reference); *Picard v. Greiff*, 617 B.R. 198, 200 (S.D.N.Y. 2020) (drawing facts on a motion to withdraw reference of an adversary proceeding "from the parties' submissions in support of and in opposition to the motion, including memoranda of law and exhibits").

effort to "avoid all of the transfers in interest in any of the Debtor's property made by the Debtor from the [Kossoff PLLC Interest on Lawyer Accounts ('IOLA')] to [Barasky]" during the ninety days leading up to and including the commencement of the Chapter 7 case. *See* Adversary Proceeding, Dkt. 1 ("Compl.") ¶ 34; *see id.* ¶ 32. The Complaint explains that, under New York law, a lawyer must deposit certain client-related funds to an IOLA account "when a lawyer or a law firm receives funds from a client in a fiduciary capacity and the lawyer determines that the funds are unlikely to generate sufficient interest income to justify the expense of administering a separate segregated account for the client's benefit." *Id.* ¶ 20. At issue here is a February 16, 2021 wire transfer of $210,000 from a Kossoff PLLC IOLA account to Barasky (the "Transfer"). *See* Compl., Exh. A. Barasky contends that he received this payment "as an advance for sale [of] his real property located [at] 135 Read[e] Street, [New] York[,] NY 10013." Dkt. 1 ("Motion") at 4.

The Complaint states four causes of action against Barasky related to the Transfer. Togut seeks (1) to avoid the Transfer as a preferential transfer pursuant to Section 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b), Compl. ¶¶ 35-47; (2) to alternatively avoid the Transfer as a fraudulent transfer pursuant to Section 548 of the Bankruptcy Code, 11 U.S.C. § 548, Compl. ¶¶ 48-52; (3) to recover "an amount to be determined at trial that is not less than the total amount of the Transfer[]," Compl. ¶ 56, contending it is an avoidable transfer pursuant to Section 550 of the Bankruptcy Code, 11 U.S.C. § 550, Compl. ¶¶ 53-56; and (4) to disallow any claims filed by Barasky in the Chapter 7 case pursuant to Section 502(d) of the Bankruptcy Code, 11 U.S.C. § 502(d), Compl. ¶¶ 57-71.

Barasky was served with the summons and the Complaint on April 4, 2023. *See* Adversary Proceeding, Dkt. 4. Barasky filed motions to dismiss and to withdraw the reference before the Bankruptcy Court on May 4, 2023, Adversary Proceeding, Dkts. 5-6, and then also moved to

withdraw the reference and to dismiss in this Court on May 18, 2023, Dkt. 1.  Togut filed his opposition on June 1, 2023.  Dkt. 3.

## II.  Discussion

District courts have original jurisdiction over civil proceedings "arising under," "arising in," or "related to" cases under Title 11, the United States Bankruptcy Code.  28 U.S.C. § 1334(b). Nevertheless, a "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a).  This District has exercised its statutory prerogative by referring all Title 11 cases to the bankruptcy court pursuant to a standing order.  *In re Standing Order of Reference Re: Title 11*, 12 Misc. 32 (LAP) (S.D.N.Y. Feb. 1, 2012).

Nevertheless, a district judge may withdraw a case's reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d) either because withdrawal is required or because it is permissive. The Court will discuss these two standards in turn.

### A.  Mandatory Withdrawal

"Section 157(d) requires withdrawal of a reference to bankruptcy court if 'resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.'"  *SVB Fin. Grp. v. Fed. Deposit Ins. Co. (In re SVB Fin. Grp.)*, No. 23 Civ. 7218 (JPC), 2023 WL 8622521, at *5 (S.D.N.Y. Dec. 13, 2023) (quoting 28 U.S.C. § 157(d)).  "The Second Circuit has explained that withdrawal is mandatory if 'substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for resolution of the proceeding.'"  *Id.* (quoting *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)).  "Such consideration exists for 'cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application,

of federal laws apart from the bankruptcy statutes.'" *Id.* (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991)).

As Togut points out, Barasky's brief in support of his motion to withdraw the reference is not a model of clarity. *See* Opposition at 3. The Court can discern only one argument by Barasky broadly related to mandatory withdrawal: that withdrawal is required because Barasky "is a resident of New Jersey." Motion at 3. In mentioning this fact, Barasky seems to gesture to Section 157(d)'s reference to "laws of the United States regulating organizations or activities affecting interstate commerce." However, this passage describes the type of federal laws that implicate mandatory withdrawal, as opposed to the citizenship of the parties to a bankruptcy proceeding. More generally, mandatory withdrawal is not warranted because Barasky has identified no non-Title 11 federal statute that is implicated by the Adversary Proceeding. As the Bankruptcy Court itself noted, "[t]his adversary proceeding presents claims and issues that bankruptcy courts routinely consider, namely preference and fraudulent conveyance claims, which are among the types of actions statutorily defined as 'core proceedings.'" *In re Kossoff PLLC*, 2024 WL 665913, at *4 (citing 28 U.S.C. § 157(b)(2)(F), (H)). The Court therefore denies Barasky's motion to the extent that it advances an argument for mandatory withdrawal.

### B. Permissive Withdrawal

Section 157(d) also authorizes a district court to "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). This procedure is also known as permissive withdrawal. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, No. 20 Civ. 4767 (MKV), 2023 WL 6122905, at *2 (S.D.N.Y. Sept. 18, 2023). "As the moving party, [Barasky] has the burden to show cause to withdraw the reference." *Arrowood Indem. Co.*, 2021 WL 1978560, at

\*3.  While "[t]he statute does not define 'cause[,]' [t]he Second Circuit has instructed that, in determining whether cause exists, several factors should be considered: 'whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.'"  *Id.* (second quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993)).

It bears mention that the Second Circuit's decision in *Orion* predates the Supreme Court's holding in *Stern v. Marshall*, 564 U.S. 462 (2011), that a claim can be "designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter," *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 673-74 (2015) (internal quotation marks omitted).  *See Stern*, 564 U.S. at 494-95.  In light of *Stern*, "the relevant inquiry under the first prong of the *Orion* test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter."  *Penson Fin. Servs., Inc. v. O'Connell (In re Arbco Cap. Mgmt., LLP)*, 479 B.R. 254, 262 (S.D.N.Y. 2012); *see McCord v. 5615 N., LLC (In re N. Blvd. Automall, LLC)*, No. 20 Misc. 142 (RPK), 2022 WL 5184729, at \*3 (E.D.N.Y. Oct. 5, 2022).  The Court therefore proceeds to analyze the *Orion* factors as modified by *Stern*, as it has done in the past.  *See Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Cos.*, 634 B.R. 226, 232-33 (S.D.N.Y. Sept. 3, 2021).

### 1.  Final Adjudicative Authority

The crux of Barasky's objection to the Bankruptcy Court overseeing the Adversary Proceeding is that it lacks the constitutional power to enter a final judgment for two of the causes of action in the Complaint, *i.e.*, the first cause of action for avoidance of the Transfer as a

preferential transfer under 11 U.S.C. § 547(b) and the second, alternative cause of action for avoidance of the Transfer as a fraudulent transfer under 11 U.S.C. § 548. Motion at 3; *see* Compl. ¶¶ 35-47 (Count One), 48-52 (Count Two). As Togut points out, both "proceedings to determine, avoid, or recover preferences" and "proceedings to determine, avoid, or recover fraudulent conveyances" are listed as core proceedings under Section 157. 28 U.S.C. § 157(b)(2)(F), (H); *see* Opposition at 11. But, as discussed above, that characterization is of questionable import following *Stern*. And while this issue is not ultimately dispositive for his motion, the Court agrees with Barasky that the Bankruptcy Court lacks the constitutional authority to enter final judgment on these two claims.[2]

As has been summarized by this Court, "[t]he Supreme Court [in *Stern*] found that bankruptcy courts lack constitutional authority to enter final judgment on core claims, with three exceptions: (1) the defendant filed a proof of claim in the bankruptcy proceeding; (2) the right being adjudicated is public rather than private; or (3) the parties consented to have the bankruptcy court enter final judgment." *Arrowood Idem. Co.*, 2021 WL 1978560, at *3 (internal quotation marks omitted). None of these factors appear to apply here. No party claims that Barasky filed a proof of claim in the underlying bankruptcy proceeding, nor does the Chapter 7 case's claims register reflect one. *See* Claims Register, Kossoff PLLC Bankruptcy. Togut also does not assert that Barasky ever consented to the Bankruptcy Court entering a final judgment for the two causes

---

[2] The Court expresses no view as to the other two causes of action in the Complaint, since Barasky failed to advance an argument related thereto. *See* Compl. ¶¶ 53-61. It also bears mention that, even if the Court were to ultimately determine that the Bankruptcy Court cannot enter final judgment on the other two causes of action (and, once more for emphasis, it reaches no such holding today), this District's standing order for bankruptcy cases expressly provides that a "district court may treat any order of the bankruptcy court as proposed findings of fact and conclusions of law in the event the district court concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United States Constitution." *In re Standing Order of Reference Re: Title 11* at 1.

of action highlighted above; indeed, Barasky filed the instant motion to withdraw the reference

just under a month after having been served with the Complaint.  *Compare* Adversary Proceeding,

Dkt. 4 (stating that Barasky was served on April 5, 2023) *with* Motion at 9 (instant motion dated

May 4, 2023); *see generally Wellness Int'l Network*, 575 U.S. at 685 ("[A] litigant's consent—

whether express or implied—must still be knowing and voluntary. . . .  [T]he key inquiry is

whether the litigant or counsel was made aware of the need for consent and the right to refuse it,

and still voluntarily appeared to try the case before the non-Article III adjudicator." (internal

quotation marks omitted)); *In re Madoff*, 2023 WL 6122905, at *4 ("Courts generally hold that a

litigant impliedly consents to the bankruptcy court's entry of final judgment by appearing before

the bankruptcy court and failing to raise a constitutional objection to its jurisdiction.").

     The Court also readily concludes that the two causes of action that Barasky identifies

implicate private rights.  As to Togut's second cause of action for fraudulent transfer under Section

548 of the Bankruptcy Code, "it is now well established that fraudulent conveyance claims involve

private, not public, rights."  *In re Madoff*, 2023 WL 6122905, at *3 (collecting cases).  As the

Honorable J. Paul Oetken has observed, the Supreme Court's decision in *Granfinanciera, S.A. v.

Nordberg*, 492 U.S. 33 (1989), supports this conclusion:

> In *Granfinanciera*, the Court held: "There can be little doubt that fraudulent
> conveyance actions by bankruptcy trustees—suits which . . . constitute no part of
> the proceedings in bankruptcy but concern controversies arising out of it—are
> quintessentially suits at common law that more nearly resemble state-law contract
> claims brought by a bankrupt corporation to augment the bankruptcy estate than
> they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy
> res. They therefore appear matters of private rather than public right."

*In re Arbco Cap. Mgmt.*, 479 B.R. at 264 (quoting *Granfinanciera*, 492 U.S. at 55-56); *see also*

*Pereira v. Garritano (In re Connie's Trading Corp.)*, No. 14 Civ. 376 (LAK) (GWG), 2014 U.S.

Dist. LEXIS 63730, at *26 (S.D.N.Y. May 8, 2014), *report and recommendation adopted*, 2014

U.S. Dist. LEXIS 98202 ("Under both *Stern* and *Granfinanciera*, . . . it is axiomatic that a fraudulent conveyance claim against a person who has not submitted a claim against a bankruptcy estate, brought solely to augment the bankruptcy estate, is a matter of private right that cannot be finally determined by the bankruptcy court." (internal quotation marks omitted)).  Judge Oetken then applied this logic in deeming both intentional fraud claims under Section 548(a)(1)(A) and—most relevantly for present purposes—constructive fraud claims under Section 548(a)(1)(B) as actions that implicate private rights and therefore claims for which the bankruptcy court lacks the constitutional authority to enter a final judgment.[3]  *See In re Arbco Cap. Mgmt.*, 479 B.R. at 257, 264.  The Court is persuaded by this reasoning and thus determines that Count Two implicates private rights.

The Court reaches the same conclusion for Count One for avoidance of a preferential transfer under Section 547.  Here, too, Judge Oetken's decision in *In re Arbco Capital Management* is instructive.  In sum, "[w]hile the Supreme Court has not expressly held that actions to avoid preferential transfers are matters of private right, the Supreme Court has examined the authority of the bankruptcy court to adjudicate preferential transfer claims in the Seventh Amendment context and determined that preference defendants are entitled to a trial by jury."  *Id.* at 265 (citing *Schoenthal v. Irving Tr. Co.*, 287 U.S. 92, 94-95 (1932)).

> [Since] *Granfinanciera* makes clear that the analysis with respect to a defendant's right under the Seventh Amendment to a jury trial translates to the Article III context . . . [and] a preference defendant is entitled to a jury trial before an Article III court where it has not filed a proof of claim against the bankruptcy estate, it follows that the preference defendant is entitled to have its claim finally adjudicated by an Article III judge.

---

[3] While Count Two does not specify the subsection of Section 548 under which Togut is proceeding, the language of paragraph 51 of the Complaint appears to track that of Section 548(a)(1)(B) for constructive fraud.

*Id.* at 266; *see also Granfinanciera*, 492 U.S. at 53 ("[T]he question whether the Seventh Amendment permits Congress to assign its adjudication to a tribunal that does not employ juries as factfinders requires the same answer as the question whether Article III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal."); *Pryor v. Tromba*, No. 13 Civ. 676 (JFB), 2014 WL 1355623, at \*5 & n.5 (E.D.N.Y. Apr. 7, 2014) (citing, *inter alia*, *In re Arbco Cap. Mgmt.*, 479 B.R. at 264-66) (following Judge Oetken's approach in concluding that "[c]laims based on preferential transfers . . . do not fall under the public rights exception to *Stern*"); *Redeye II, LLC v. MorrisAnderson & Assocs. (In re Swift Air, L.L.C.)*, 624 B.R. 694, 703-04 (D. Ariz. 2020) (similarly concluding that preference claims under Section 547 are *Stern* claims).

The Court therefore concludes that Counts One and Two are so-called *Stern* claims and thus that the Bankruptcy Court lacks final adjudicative authority over them. For the reasons that follow, however, the Court nonetheless denies Barasky's motion to withdraw the reference. Thus, following the procedure outlined in this District's standing order for bankruptcy cases, if the Bankruptcy Court considers these two causes of action, it shall submit proposed findings of fact and conclusions of law in lieu of a final order or judgment.[4]

### 2. Other *Orion* Factors

"A determination that the bankruptcy court lacks authority to enter final judgment does not mandate withdrawal of the bankruptcy reference." *In re Madoff*, 2023 WL 6122905, at \*6. Here, the other *Orion* factors counsel against withdrawal of the reference.

---

[4] Barasky asserts that this procedure "would only delay the process and multiply proceedings," Motion at 9, but even if the Court were to credit this point, that alone does not warrant departure from the standing order. Barasky also states that he "does not consent to the bankruptcy court hearing the matter on any level[,] including for findings of fact and conclusions of law," *id.* at 1, but the Supreme Court has explicitly mandated this practice for *Stern* claims, a fact that Barasky entirely fails to address. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 36 (2014).

Turning first to judicial efficiency, "[i]t is especially inefficient to withdraw the reference where, as here, the bankruptcy court has extensive experience with a particular litigation." *Id.* (collecting cases). Togut has filed dozens of adversary proceedings in the underlying Chapter 7 case; the Bankruptcy Court is thus intimately familiar with the context and circumstances behind the Adversary Proceeding and can draw on its knowledge of the Chapter 7 case more broadly in resolving Togut's claims against Barasky. *See* Opposition at 12. And as noted above at *supra* II.A, the two claims at issue are classified as core claims under Section 157 and are the types of matters regularly handled by bankruptcy courts. *See In re Orion*, 4 F.3d at 1101 ("[H]earing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues.").

The same logic applies to the uniformity of bankruptcy administration: to withdraw the reference in this particular adversary proceeding would entail divorcing it at an early phase of litigation from the dozens of other adversary proceedings arising from the same Chapter 7 case. *See In re Madoff*, 2023 WL 6122905, at *8 (noting that, in assessing the uniformity factor, "courts in this district have also emphasized intra-case uniformity and found that uniformity is clearly served by leaving similar, related disputes in the hands of a single court" (cleaned up)). "Courts [also] recognize that allowing the bankruptcy court to consider questions of bankruptcy law before they come to the district court for *de novo* review promotes a more uniform application of bankruptcy law." *Id.* (internal quotation marks omitted).

Prevention of forum shopping also weighs against withdrawal, albeit less strongly. To Barasky's credit, his motion does not feature some of the prototypical signs of forum shopping; for instance, moving for withdrawal after an unfavorable ruling by the bankruptcy court. *See id.* at *9. Here, by contrast, Barasky moved to withdraw the reference along with a responsive

11

pleading.  The Court also more generally cannot gainsay Barasky's concerns about having the claims against him adjudicated in a constitutionally appropriate forum.  However, it is also true that "*Stern v. Marshall* has become the mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court." *Id.* (internal quotation marks omitted).  And to that end, the Court is mindful of the maxim that "courts should employ withdrawal judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court," particularly when withdrawal of the reference would entail removing the action from the court in which a plaintiff chose to file.  *Picard v. Saren-Lawrence*, Nos. 17 Civ. 5157, 17 Civ. 5162, 17 Civ. 5163 (GBD), 2018 WL 2383141, at *5 (S.D.N.Y. May 15, 2018) (internal quotation marks omitted).  The forum-shopping factor thus ultimately weighs against withdrawal as well.

That leaves the legal nature of the claims at issue and, relatedly, Barasky's right to a jury trial thereon.  As noted by Togut, Barasky has yet to file any jury demand.  *See* Opposition at 15.  While he could still do so, "the need for a jury trial is wholly theoretical" at this juncture.  *Lehman Bros. Holdings v. Hometrust Mortg. Co.*, No. 15 Civ. 304 (PAE), 2015 WL 891663, at *5 (S.D.N.Y. Feb. 25, 2015); *see* Fed. R. Bankr. P. 9015(b) (noting that the parties may consent to a jury trial conducted by a bankruptcy judge provided that a "timely demand has been filed pursuant to Rule 38(b)" of the Federal Rules of Civil Procedure); *id.* 9015(a) (mandating that Federal Rule of Civil Procedure 38, among others, generally applies in bankruptcy court proceedings).  The fact that this case is still in its early phases, with a motion to dismiss pending, also counsels against withdrawal.  As this Court has observed, "[t]he jury trial factor does not strongly favor withdrawing the reference when the case is not close to trial-ready." *Feltman v. Tri-State Emp. Serv., Inc. (In re TS Emp., Inc.)*, No. 20 Civ. 9558 (JPC), 2021 WL 5087928, at *3 (S.D.N.Y. Nov.

2, 2021).

\* \* \*

Although the Bankruptcy Court lacks final adjudicative authority over Togut's first and second causes of action, the remainder of the *Orion* factors militate against withdrawal of the reference in the Adversary Proceeding, at least at this stage.  However, as a number of courts in this District have concluded, the appropriate remedy in light of this conclusion is to deny the motion for withdrawal without prejudice to Barasky renewing the motion during a later phase of this case should the need for a jury trial "become concrete"; namely, if Barasky timely and properly asserts his right to a jury trial on any claims so triable and only when the Adversary Proceeding becomes trial-ready.  *Lehman Bros. Holdings*, 2015 WL 891663, at \*5; *see In re Madoff*, 2023 WL 6122905, at \*9 ("[C]ourts in this District generally deny withdrawal motions where a case is not yet ready for trial . . . ." (citation omitted)).

### III.  Conclusion

For the foregoing reasons, the motion to withdraw the reference is denied without prejudice.  The Bankruptcy Court will therefore hear Barasky's motion to dismiss.  Should the Bankruptcy Court determine that the motion to dismiss is meritorious, a District Judge of this Court will review *de novo* the Bankruptcy Court's proposed findings of fact and conclusions of law, at least on Counts One and Two.  The Clerk of Court is respectfully directed to close the motion at Docket Number 1 and to close this case.

SO ORDERED.

Dated: April 29, 2024
New York, New York

_____
JOHN P. CRONAN
United States District Judge